To begin with our arguments this morning, I have the distinct pleasure of making three motions. And Judge Arena will preside in making the motions, and Judge Plager will get the vote on the motions. And the motions are motions to admit three of my law clerks to the bar of this court. And the first one is Aaron Frumkin. I move the admission of Aaron Frumkin, who is a member of the bar and is in good standing with the highest court of California. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. And then my second motion concerns my clerk, Chris Morton. I move the admission of Christopher Morton, who is a member of the bar and is in good standing with the highest court of New York. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. And then the third motion relates to my law clerk, David Yin. And I move the admission of David P. Yin, who is a member of the bar and is in good standing with the highest court of New York. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. And I would say with respect to all three of you and with respect to my fourth clerk, Oliver, as well, that it's been a great pleasure having you this year. You've really done an outstanding job. And you'll be distinguished members of the bar here, and we'll look forward to seeing you appear here in the future. And that'll be a great pleasure, too. So thank you. Those are my motions. Thank you. Thank you, Judge Dyer. Judge Blader, we have a motion before the court. How do you vote on the motion? Well, this is not easy, you know. It's not easy. Don't be unduly important. It's not easy only because we always hate to see our clerks leave us, but we're always grateful to see them go on to the wonderful careers we wish for them in the future. And I'm delighted to vote to include these three fine people in our court. Okay. And I'll vote likewise. So it looks like the motion has passed, and I direct the clerk of the court to swear you in. Please raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. I do. Welcome to the bar of the United States Court of Appeals for the Federal Circuit. Thank you. Thank you. Yes, welcome to the bar, and thank you for all your good work. Nice work. And for everybody else here, you've seen some of the real brains behind this court, okay? All right. With that accomplished, we'll turn to our four arguments today. Our first case is No. 15-1822, LG Electronics, Inc. v. Toshiba Samsung Storage. Mr. Lieberman. Good morning, Judge Dike. May it please the court, I'd like to reserve five minutes of my time for rebuttal. If I might, I'd like to focus my time here today principally on two issues. One is the claim construction issue regarding Claims 1, 7, and 8 and how it interacts with the Kiwano anticipation issue. The second has to do with Claim 2 and whether or not there was substantial evidence for the PTEP's finding of obviousness, combining the Kiwano and the O'Hara reference to find Claim 2 obvious. I'd like to begin by just a very short discussion of the technology. The technology here involves rewritable disks, like a DVD-RAM disk. A DVD-RAM disk or other optical disk has different areas on it. It has, for example, the area that the user would put his or her information. It also has what's called a spare area, so that if when the user tries to write something in the user area and there's dust or a scratch or a stain, something like that. I think you can assume that we know the facts and hopefully we have a good understanding of the technology. Why don't you address the board's construction of the first mode term? Yes, Your Honor. So the question, the claim construction issue, is whether or not the definition of the terms Mode 1 and Mode 2 should be read in light of every single embodiment in the specification, all of which make clear that for Mode 1 you have more spare area than in Mode 2. That's made clear in Figure 6. It's made clear in Figure 4B. It's made clear in every place in the specification that talks about the two modes. The PTAB, in concluding that what we were asking it to do was to read something from the specification into the claim, made two errors. One, it did not focus on this Court's decisions, like the Abbott diabetes case, which say that when every single embodiment has a particular aspect, the claim can be read in light of that embodiment. So in the Abbott diabetes case, you were talking about an electrochemical sensor. Can be read or must be read? What we believe must be read. Even under the broadest reasonable interpretation? Yes, Your Honor, and here's why. Going back to the purpose of this technology, let's assume two individuals. One has an album of wedding photographs, and that person does not want to run any risk that any of the photos will be lost. That person may want on a disk to have more spare area to take care of the possibility of defects and less user area because the capacity is not so important. On the other hand, if you have a movie that you're watching, because the frames come so quickly, you don't really care if there are lots of defects. So you want to have more space for the movie. This is all in the prior art. It's in figure three. And the prior art talks about mode one and mode two and why one can pick one or the other mode depending upon one's purposes given the content. Mode one and mode two is described as having a meaning in the prior art. And that term is then used in the patent claims. And again, every single embodiment talks about mode one having more spare area than mode two. Now, the two mistakes I would submit that the PTAB made, one was they looked at figure five, which is a flowchart. It said in the flowchart here it doesn't say anything about the relative sizes of mode one and mode two. But that's not what one would expect from a flowchart. In a flowchart, you get a flow of the process, a flow of the steps. Number two, the PTAB found what it called a clear disclaimer, clear disclaimer language in column four, lines five and six of the patent. This is at the joint appendix, page 13. And there the patent was talking about the different size disks that could be used. And this was the language. I'm not following this. The claim language doesn't say anything about relative size, right? It does not. Okay. So normally we wouldn't read a relative size limitation in there. Does the specification say that there's a relative size limitation? Every single embodiment reflects a difference in size. But it doesn't say that there has to be a difference in size, right? What it does say is every time mode one or mode two is described in the specification, it is described as mode one having a greater spare area size than mode two. That's the whole purpose of the invention, the wedding album versus the movies. It's the whole purpose. Does that show that the sizes are proportional or relative to each other? Relative. That is that one is larger than the other. It doesn't talk about necessarily the specific ratio, but that one is larger than the other. And the language, the express disclaimer language, the clear disclaimer language, the PTAB, what the PTAB characterized as clear disclaimer language. What do we need clear disclaimer language for? The language of the claim is broad, and you're the one who would have to find clear disclaimer language if you follow that line of cases here, right? Your Honor, the PTAB said that the reason why it was not convinced by the fact that every embodiment had more spare area in mode one than mode two was because of what it called clear disclaimer language. This was in column four lines five and six, which I would submit when you look at that language, it relates only to the size of the disk. That is that the claim is not related to disk of particular. Why do they have to find clear disclaimer language to give the full scope of the claim as it's written? Because I believe under the Abbott diabetes case, when you have every single embodiment reflecting a particular aspect of the invention, and the terms mode one and mode two have a particular meaning in the prior art, and that meaning is cited and discussed in the specification, it is not improper to read the claim language in light of the prior art meaning and in light of the way every single embodiment deals with those two terms. It is not improper to read it that way, but you don't have to read it that way. You can read it differently if you find that the overall written description calls for a different result or that the claims don't have a sufficient limiting factor in them. Only if you do it correctly, Your Honor. This is an issue of law and we believe that the PTAB was incorrect in its legal analysis of this claim language. If I might, I'd like to switch to Claim 2 for a moment because I think it presents a completely different issue. This is a substantial evidence issue. On Claim 2, the PTAB combined two references, a reference called Kawano and a reference called Ohara. And I'd like to focus on what the evidence was before the PTAB on this issue. In the joint appendix at 2862, there is a paragraph in the declaration submitted by TSST, a declaration of Dr. Hesselink. This is the only evidence that was before the Board that was submitted by TSST regarding why one should combine these two references. And as you'll see, this is at 2862, in paragraph 32, Dr. Hesselink says, provides the motivation at the bottom of paragraph 32 for combining these two references. He says, if one switches between modes and the two primary spare areas are of equal size, and Claim 2 is the additional element in Claim 2 over Claim 1, is that the primary spare areas are of equal size. What he says is none of the information stored in the spare area would need to be moved and the information would remain intact after conversion. So this is what he says the rationale is for combining these two references. That rationale is expressly identified in the 126 patent as the reason for the invention. The problem and the solution to the problem. That is, the 126 patent at the top of column 4 and also in column 2 talks about the compatibility problems when you have primary spare areas that are of different sizes. What Hesselink does here, and this is the only evidence, is he takes the solution which is identified in the 126 patent and says, this is why you would combine the two references. But this court has repeatedly held that you cannot use the solution in the invention as a hindsight roadmap to help you through the different references. And that's the NTP case as a case directly on point. So what else does Hesselink say? There's paragraph 33 in Hesselink. And by the way, the entire section in Hesselink on claim 2 runs from paragraph 29 to paragraph 33. The only substantive ones are 32 and 33. In Hesselink, in paragraph 33, essentially what Hesselink says is there's motivation to combine because it would have been obvious to combine. There is no reasoning here. There is no rationale. There is no scientific discussion. And what do you have on the other side? You have on the other side of this a detailed declaration from LG's expert, Dr. Mansoorapur. And Dr. Mansoorapur has a detailed explanation as to why you would not combine these references. And that's at JA 3013 to 15. So you have essentially no evidence on the one side except for the solution that was identified in the 126 patent. And they can't use that as a hindsight basis for combining references. And on the other side you have a detailed declaration which explains why you wouldn't combine these references. The PTAB had no substantial evidence that would support its conclusion that it would be obvious to combine these two references. I believe I've run past my ten minutes, Your Honor. All right. Do you want to save the rest of your time? I do. Okay. Thank you, Mr. Lebrun. Thank you. Mr. Roa. Good afternoon, Your Honors. May it please the Court. Joe Roa of Nixon and Vander High. We were not on the original briefs in this case. We came off record probably a month, maybe two months ago. Are you disclaiming the briefs in the case? No, Your Honor. Not at all. I just wanted to make that clear. Claim one of the 126 patent requires a first mode and a second mode. Claim one says the first mode has both a primary spare area and a supplementary spare area. Claim one also states that the second mode has a primary spare area. That's what the claim says. LG's main argument is a claim construction argument. And LG's argument in that respect is that the first mode spare area has to be larger than the second mode spare area. They want to read this larger limitation into claim one. The PTAB spent a lot of time on that argument. The PTAB provided at least five reasons why LG's argument is wrong. And I'm going to go through those. LG's argument conflicts with the claim language. It also conflicts with the specification. Contrary to what LG argues, all the embodiments do not describe that larger feature that they are arguing. Final written decision, pages 12 through 17, there's at least five reasons why LG's claim construction argument is wrong. First is that we're dealing with the broadest reasonable construction, the BRI standard here. We're not under Phillips in this IPR proceeding. The second is the claim language itself. As PTAB pointed out, the claim language doesn't say anything about size difference between first mode and second mode. In fact, there are dependent claims which do have some size limitations. The patent owner certainly knew how to claim size when the patent owner wanted to. In claim one, there's no language about size. The next three reasons demonstrate why LG's argument is not consistent with the specification. As the PTAB pointed out, the second mode can also have a supplemental spare area. Claim one mentions a primary spare area for the second mode. The specification of the patent at column four, lines 35 through 37, explains that the second mode can also have a supplemental spare area. Why is this important? It's important because the patent never tells us what the size of that supplemental spare area is in the second mode. If we don't know the size of the supplemental spare area in the second mode, we have no idea, reading the patent, which mode has larger spare area. So the argument that LG is making, that every single embodiment is consistent with first mode being larger than second mode, is flat out wrong. If you don't know the size of the supplemental spare area in the second mode, that cannot be the case. LG tries to explain this away in its briefs by saying that we should ignore the supplemental spare area in the second mode because that's not done during formatting. The problem with that argument is that LG told the board during the oral hearing in the IPR that the supplemental spare area in the second mode is implemented during formatting. The board thought so much of that Q&A to LG's counsel that they put it in the final written decision. In the final written decision at page 17, the board quotes the Q&A to LG's counsel. This Q&A evidences that LG affirmatively said that the supplemental spare area in the second mode is done during formatting. So contrary to what they say in their brief, you cannot ignore it. That's the first reason why their argument is inconsistent with the spec. The second reason, as the board pointed out, figure 5 of the 126 patent, the spec says that figure 5 shows the invention. There's no size in figure 5. As the board explained, that's also consistent with not reading a size limitation into claim 1. The last point that the board made that I'm going to mention is that the specification states, quote, the present invention is not limited to this example. The specification says that just before there's a long iteration of statements that LG is trying to rely on. So the board is certainly reasonable in saying that all of these limitations should not be read into the claim when the spec tells you they shouldn't be read into the claim. Nowhere does the specification say that the spare area of the first mode has to be larger than the spare area of the second mode. To the contrary, when you don't know the size of the spare area of the second mode, as explained, it's impossible to even tell which one's larger. LG admits in its brief, reply brief, page 4, that the patentee did not act as its own lexicographer here. So the argument is not a lexicography argument. It's simply that, well, if the specification says that, we have to read it into claim. That's wrong for the reasons we've discussed. It's also noteworthy that LG, in its opening brief, never even offered a construction of first mode or second mode. That's curiously missing from LG's opening brief. They never said what their construction would be. They just said, hey, the board erred by not reading a size in. The reason they did that, in my view, is that their proposed constructions before the board were long convoluted and not supported by the specification. In the reply brief, there's a suggestion on what they think the construction should be for first mode. Isn't the argument here, it's not so much whether a specific size requirement is read into the claims, but a relative size requirement? Yes, Your Honor. The argument is that first mode size has to be larger than second mode size. That's LG's argument, yes. Okay. I thought you were arguing that there had to be a certain size, a specific size. That's not your argument. No, Your Honor. My argument is that the board properly construed the claim and that you cannot read a relative size in when it would be inconsistent with the specification, especially where you can't even tell what the size of the second mode is when you read the spec because you don't know the size of the supplementary spare area in the second mode. LG also argues that TSST's construction or the board's construction of first mode conflicts with the first mode discussed in the background. Well, that's easily distinguishable. First of all, the first mode of the invention in the 126 patent  The first mode in Claim 1 expressly requires two spare areas. The first mode in the background only has one. So clearly the first mode in Claim 1 and in the invention is not referring to the first mode that only has one spare area in the background. That cannot be more clear. LG's construction also would conflict with the first mode in the background because LG's construction, if we look at their reply brief where they presented it on page 3, LG's construction also says that the first mode has two spare areas. Well, that would also conflict with the first mode in the background. So everything that LG is saying about the PTAB's construction conflicting with the first mode in the background also applies to their own construction. Just for background information, Counsel, I understand there is a district court suit that triggered all of this. What is the status of that suit at the present time, do you know? Yes, Your Honor. The district court suit is ongoing. It was not stayed? It was not stayed. Some patents have been stayed. The 126 patent, which is at issue in this appeal, has not been stayed before the district court. Other patents have been stayed in view of IPRs, but the 126 patent that we're talking about here has not been stayed. Has the district court ruled on any of this, to your knowledge? No, Your Honor. Invalidity contentions were submitted, I believe, about a month ago. There has not been a markman ruling in that case. And also, from a status point of view about the district court case, the TSSTK, who is the appellee here, is the defendant in that district court case. There was a bankruptcy filing in Korea about a month ago, so there is a motion to stay that is pending, awaiting the results of the bankruptcy. A bankruptcy filing by your client? Yes, Your Honor, in Korea. Just to save time, I'm going to ask you the same question about the second suit. Yes, Your Honor, the second suit is ongoing because the second suit, our client, TSSTK, is the plaintiff in that suit. There is no motion to stay pending. That's an asset of the client, so I would expect that case to go forward, even if there is an institution of bankruptcy. Okay. Anything else? With respect to Claim 2, Your Honor, I would just say that the PTAB spent nine pages explaining the obviousness of rejection of Claim 2. It's very detailed. It's well thought out. And the portion of the declaration that was cited is not the only evidence that was relied upon. The references themselves are evidence. Prior art is evidence. It's all evidence. It says what it says. That's all, Your Honor. Okay. Thank you, Mr. Rowland. Thank you. Mr. Lieberman, you've got three minutes and 42 seconds. Thank you, Your Honor. In response to the procedural question the Court asked, the District Court litigation with respect to the 126 patent that's preceding the motion to stay there was denied by the District Court, in part because certain claims have not been held invalid by the PTAB. For example, Claim 11, which survived the final written decision, is being asserted in that underlying litigation. I'd like to focus, if I may, on Claim 2 and the obviousness issue and what it is that the PTAB said it was relying upon. What the PTAB said it was relying upon, and this is on page 27 of the joint It was relying upon an annotated chart of the prior art that was created by counsel. And that annotated chart was provided with the reply to the patent owner's response in the proceeding below. So after the evidence was in, in their reply, they submitted an attorney-created annotated chart. It's not the subject of any expert testimony. Dr. Hesselink does not say anything about it. He does not talk about the substance of it. He does not even talk about it in concept. And what the PTAB said is, therefore petitioner's presentation establishes persuasively that O'Hara does not teach away. They make very clear that the evidence upon which they are relying is a handwritten chart created by the lawyer. No, no, that's not evidence. The chart is like a demonstrative exhibit. It sets forth in convenient form what is elsewhere in the record. That's what it's supposed to do. But it does not because there is nothing elsewhere in the record that would support the Kawano-O'Hara combination. So if you look at the Hesselink Declaration, paragraphs 32 and 33, indeed any discussion in the Hesselink Declaration of Kawano, there is no explanation as to why you would combine those two other than the two paragraphs that I cited to this court. The first paragraph takes the rationale right out of the 126 patent, which you're not permitted to do under NTP. That's classic hindsight analysis. And paragraph 33 simply says it's obvious to combine because it would be obvious to combine. It says nothing more than that. That's the only evidence. What you then have is the PTAB saying, what I'm persuaded by is this annotated chart. The annotated chart is not really demonstrative. This was sort of a substitute for expert testimony. The lawyers can't do that. It's the experts that have to provide the testimony. And there was zero, nothing from Hesselink to support the combining of those two references. If there's nothing, that's less than substantial evidence. I would therefore ask the court to reverse on claim two. I don't know if the court has questions on the claim two issue. But, again, the entirety of the record on claim two and why you would combine those two references is in those two paragraphs in the Hesselink declaration. That's it. Now, on the issue of claim construction, the argument that was made about adding a supplemental spare area at mode two, if necessary, when a recording takes place, that's at a very different stage in the process. And the claim language makes that clear.  I think, Mr. Lieberman, we're out of time. Thank you. Thank you, Mr. Rowland. That concludes our argument.